# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 3, 2014 Session

## IN RE: JACOB C. H. and LILLIANNA J. H.

**Appeal from the Circuit Court for McMinn County**
**No. 2010CV461      Lawrence H. Puckett, Judge**

---

**No. E2013-00587-COA-R3-PT-FILED-FEBRUARY 20, 2014**

---

George H. ("Father") and Hollie[1] H. ("Stepmother") filed a petition seeking to terminate the parental rights of Wendy H. ("Mother") to the minor children Jacob C. H. and Lillianna J. H. ("the Children")[2] and to allow Stepmother to adopt the Children.  After a trial, the Trial Court entered its final order terminating Mother's parental rights to the Children after finding and holding, *inter alia*, that clear and convincing evidence existed of grounds to terminate Mother's parental rights to the Children pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102 for willful failure to visit and willful failure to support, and that clear and convincing evidence was proven that it was in the Children's best interest for Mother's parental rights to be terminated.   Mother appeals the termination of her parental rights.  We affirm the termination of Mother's parental rights to the Children.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

Joseph H. Crabtree, Jr., Athens, Tennessee, for the appellant, Wendy H.

Stephen S. Duggins, Chattanooga, Tennessee, and, Charles W. Pope, Athens, Tennessee, for the appellees, George H. and Hollie H.

---

[1]In the record, Hollie H.'s first name sometimes is spelled "Holly."  Hollie H.'s brief spells her name as "Hollie" so we adopt that spelling.  In either case, she is the stepmother of the children, and her identity is not in dispute.

[2]Jacob was born in 1998.  Lillianna was born in 2000.

# OPINION

## Background

Mother and Father, parents of the Children, were divorced in 2004. Mother initially exercised primary custody of the Children. In 2006, Father married Stepmother. In January 2008, the Chancery Court for McMinn County modified the final decree of divorce by granting Father primary custody of the Children. Mother received visitation rights to the Children subject to a number of restrictions, including that she abstain from the use of illegal drugs or alcohol. On November 17, 2010, Father and Stepmother filed a petition seeking to terminate Mother's parental rights to the Children and for adoption of the Children by Stepmother. The petition alleged numerous grounds for termination, including failure to visit and failure to support. Trial began in August 2012.

Mother testified. Mother, age 36 at trial, married Father at age 17. Father was five years older than Mother at the time of their marriage. Regarding her educational background, Mother stated that she had earned a GED. When Mother and Father divorced in 2004, Mother initially exercised primary custody of the Children. This status changed in December 2007. Father received primary custody of the Children and Mother was granted restricted visitation rights. This change of custody occurred amidst concerns about Mother's substance abuse.

Mother testified that her drug of choice was methamphetamine. Mother stated that she had last used methamphetamine around six weeks before trial. According to Mother, her problems with methamphetamine dated back three years. However, Mother's substance abuse problems started much earlier than that. Indeed, the 2004 final decree of divorce makes reference to Mother's drug use. Mother completed a program for drug rehabilitation at Buffalo Valley but relapsed afterwards. Mother testified that she had been attending church and counseling in response to these troubles.

Mother continued her testimony. In April 2010, against the backdrop of Mother's escalating substance abuse issues, the Chancery Court for McMinn County entered an agreed order setting out certain conditions for Mother. Mother's first option was to sign up to become a full time resident at a rehabilitation center called the Branches. There, Mother was to have supervised visitation with the Children. Alternatively, if Mother did not comply with the first option, the order provided her a second option. Mother could exercise supervised visitation at a facility in Maryville called Gardner Place. Neither option, however, went according to plan. Mother, citing a disagreement with the program's religious views, pulled out of the Branches. Mother acknowledged that she chose the Branches in the first place. Regarding the second option for visitation, Mother testified that she lacked the money

to exercise supervised visitation at Gardner Place. Mother also stated that she "didn't have no ride," the facility was far away, and she lacked a vehicle or driver's license. Mother also testified that Father and Stepmother failed to cooperate with her on visitation matters.

Mother acknowledged that she had not paid any child support for the four months preceding the filing of the petition to terminate her parental rights. Mother stated in answer to a question regarding visitation: "I wasn't allowed to. And my mother tried to pay them child support, but she denied the check and then she wanted me to pay with a money order. So I did try - - Mama did twice with checks and I tried once with a money order and Mama said no because they're not trackable. So I did try to pay child support." The Trial Court also had entered an order allowing Mother to exercise visitation with the Children if she would attend AA classes. Mother failed to follow through. Once again she proffered a reason: "I wasn't in a location where I could do it at the time." When asked if it was in the Children's best interest for her parental rights to be terminated, Mother replied that it was not: "I'm their mother and they need me just as well as they do both of them . . . they love me and they worry about me and I worry about them. I need them just as much as they need me."

The trial resumed in December 2012. Between the first and second day of trial, Mother began the process of voluntarily surrendering her parental rights to the Children but did not see it through to completion. Mother did not appear at the second trial date. Before trial resumed without Mother, the Trial Court stated with regard to Mother's credibility: "Unfortunately, my note indicates, Mother's testimony on all points is not trustworthy and on all material points is not believed, so that's how I took her testimony."

Stepmother testified. Stepmother, originally from Texas and age 26 as of trial, married Father in 2006. Stepmother testified that she and Husband obtained custody of the Children in 2007. Initially, Mother exercised her visitation rights "for the most part." After an incident involving Mother having alcohol in the car with the Children, increased monitoring was sought for Mother's visits. Stepmother testified that Mother would sometimes "scream and yell and threaten" her. Continuing her testimony, Stepmother stated that Mother did not see the Children while Mother was enrolled in rehabilitation even though she was not prevented from doing so. According to Stepmother, Mother did not bother to attend supervised visitation at Garner Place after she dropped out of the Branches. This was so even though Stepmother and Father had filled out the necessary paperwork and paid the fees. With respect to Mother's ability to travel, Stepmother testified that Mother "always got wherever she wanted to go."

The Children also testified. Jacob, 14, stated that he could not remember when he had last received anything from Mother. Jacob remembered getting presents from Mother

perhaps two or three years ago. Lillianna testified, as well. Lillianna, 12, stated that she had not seen Mother in some time. Both of the Children expressed concern for Mother.

Father testified. Father stated that he had exercised full custody of the Children for around five years. Father testified that Stepmother had been a fit mother to the Children and was suitable for that role going forward. Father testified that Mother had in fact made payments towards child support. By Father's account, Mother paid $25 at some point, as well as $500 to purge her contempt. Incidentally, the $500 purge payment was made on the same day that the petition to terminate parental rights was filed.

After the trial, the Trial Court entered its final order terminating Mother's parental rights to the Children after finding and holding, *inter alia*, that clear and convincing evidence existed of grounds to terminate Mother's parental rights to the Children pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102 for willful failure to visit and willful failure to support, and that clear and convincing evidence was proven that it was in the Children's best interest for Mother's parental rights to be terminated. The Trial Court also ordered the adoption of the Children by Stepmother. In its oral ruling, which was incorporated into the final order, the Trial Court stated, in part:

> And even though we've got problems with the child support orders and whether Nashville got money or whether there was a present brought to court the last time or to the office, all of that, I agree, I think that's tokenism. That's just trying to keep a toehold, pretending to keep that door open as a parent with these children, at the same time really embracing the lifestyle that has caused her to lose custody to begin with. And then after she lost custody, to just go further into that pursuit of her drug of choice or drugs of choice.
>
> ***
>
> And I would say the other attempts of seeing the children or calling them, even if she - - I'm convinced she didn't pay any support from the April to November 18 dates. But even if that weren't the case and say she had made a payment, but that's not the problem here, folks. Abandonment by not paying or being able to pay support or visits is not the problem. The problem is the reason she's not able to do that is because of her affection for the drugs that she's involved with. And I don't really know what all those may be, but it's said to be methamphetamines in this record, which we all understand what that does to someone, so.

-4-

And as far as by clear and convincing evidence as to best interest, it's a difficult thing for a step-parent to step into the role of mother. You might ask yourself this question - - I have from the beginning - - why, why? Make her straighten up, pay child support and keep that relationship. Well, one of the reasons why is because, in this case, I think there's clear and convincing evidence that's compelling to this Court that this mother's drugs and lifestyle is hurting these children. It's to the point of abusive. The role reversal here, where the children are more concerned about the mother. Bless their hearts, they got on the stand and they love their mother and I think they're more adult than she is.

And will an adoption or a termination - - when they actually know who their mother is and she's out there somewhere - - relieve them from that burden? I don't think it would, but at least the law can say to them, young people, technically she's not your mother. She's no longer your mother. She's not behaved like a mother, and that's what the law says. And to the extent that that can help them not be further damaged by her conduct, I think that statement by the law needs to be made. Very difficult.

Mother appeals the termination of her parental rights.

### Discussion

Though not stated exactly as such, Mother raises two issues on appeal: 1) whether the Trial Court erred in terminating Mother's parental rights to the Children pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102 for willful failure to support; and, 2) whether the Trial Court erred in terminating Mother's parental rights to the Children pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102 for willful failure to visit. Though not raised by Mother, we also will address the issue of whether the Trial Court erred in finding that it was in the Children's best interest for her parental rights to be terminated.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the

statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Before we address Mother's issues, we note that the Trial Court specifically found Mother to be not credible. As our Supreme Court has instructed:

When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witnesses' demeanor and to hear in-court testimony. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997) (quoting *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996)). Because trial courts are able to observe the witnesses, assess their demeanor, and evaluate other indicators of credibility, an assessment of credibility will not be overturned on appeal absent clear and convincing evidence to the contrary. *Wells v. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

*Hughes v. Metro. Gov't of Nashville and Davidson County*, 340 S.W.3d 352, 360 (Tenn. 2011). We give the Trial Court's determination as to Mother's credibility great deference on appeal.

Tenn. Code Ann. § 36-1-113(g)(1) establishes abandonment as a ground for termination of parental rights. As relevant to this case, Tennessee law defines abandonment as follows:

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

Tenn. Code Ann. § 36-1-102 (1)(A)(i) (2010).

We have discussed the willful character of abandonment for failure to support:

This court has consistently held that the term willfulness as it applies to a party's failure to support a child must contain the element of intent. *In re Swanson*, 2 S.W.3d 180, 188–89 (Tenn. 1999). Indeed, "defining abandonment as the mere non-payment of support [is] unconstitutional because this language creates an irrebuttable presumption of abandonment, irrespective of intent." *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003) (citing *In re Swanson*, 2 S.W.3d at 188). The element of intent utilized in termination

proceedings "does not require the same standard of culpability as is required by the penal code." *In re Audry S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005). "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id*. "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id*. at 863–64. Additionally, " '[f]ailure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide the support, and has no justifiable excuse for not providing the support.' " *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) (quoting *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)).

*In re: Dylan H.*, No. E2010-01953-COA-R3-PT, 2011 WL 6310465, at *6 (Tenn. Ct. App. Dec. 16, 2011), *no appl. perm. appeal filed*.

We first consider whether the Trial Court erred in terminating Mother's parental rights to the Children pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102 for willful failure to support. In order to address this issue properly, we must account for any instances of support from Mother during the applicable four month window. There is evidence in the record that Mother tried to give the Children some gifts. At another time, Mother made a $25 payment for the Children's support. Even if we accept that this "support" occurred within the relevant four month time frame, we regard it as mere token support as did the Trial Court.

A larger payment by Mother represents a more serious issue. Faced with contempt, Mother made a $500 purge payment on November 17, 2010. Mother's arrearage was set at $2,169.00. Mother thereby avoided incarceration. Notably, the payment was made on the *same day* that the petition to terminate parental rights was filed. The instant case is somewhat unusual in this respect. Mother argues on appeal that her $500 payment constitutes non-token support within the relevant four month window. The statute speaks of "a period of four (4) consecutive months *immediately preceding* the filing of a proceeding or pleading to terminate the parental rights . . . ." Tenn. Code Ann. § 36-1-102 (1)(A)(i) (2010) (emphasis added). The question is whether the day of the filing of the petition to terminate parental rights counts in the four consecutive month window and whether a substantial child support payment that day would cure failure to support. We believe the answer is no.

Consider a scenario where a petition to terminate parental rights which includes the ground of willful failure to support is filed at 8:56 a.m. and a large child support payment

is made by the respondent-parent minutes later. Would we need to determine the exact timing to the minute and second of the respective filings? We do not believe our General Assembly contemplated or intended such a race when it enacted Tenn. Code Ann. § 36-1-102 (1)(A)(i). A day is a unit of time more amenable to effective adjudication. In our view, a more reasonable construction is that the applicable four month window for determining whether child support has been paid in the context of the ground of willful failure to support includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed. In other words, the last day of the four month period is the day before the petition is filed. We, therefore, hold that Mother's $500 payment was made outside the applicable time period.

Even if we err in our interpretation of Tenn. Code Ann. § 36-1-102 (1)(A)(i) and the applicable four month window, the facts of this case establish that Mother failed to support the Children. Mother's $500 purge payment came at the last minute not to help support the Children but rather to stave off her incarceration. This was not so much genuine child support as it was a bid for self-preservation.

Having determined that Mother failed to support the children, we must consider whether her failure was willful. We note that the Trial Court found Mother to not be credible. Indeed, the Trial Court observed: "Mother's testimony on all points is not trustworthy and on all material points is not believed . . . ." A trial court could scarcely be more unequivocal about a witness's lack of credibility than the Trial Court was here. As noted earlier, we afford great deference to credibility determinations by trial courts. There is no clear and convincing evidence to the contrary contained in the record before us.

Mother's myriad excuses about problems with transportation and money ring hollow in light of her lack of credibility. On appeal, Mother contends that health issues interfered with her ability to work, but the record does not substantiate this. Moreover, there is the matter of the $500 Mother paid at the last minute to save herself from incarceration. Far from serving as evidence that Mother had a belated epiphany about her responsibilities as a parent, Mother's last minute $500 payment tends to show that Mother somehow is able to procure relatively significant resources when it comes to looking after her own interests but not when it comes to providing for the Children. Meanwhile, Mother managed to continue to abuse drugs.

We agree with the Trial Court's finding that Mother's failure to support the Children was willful. We find no error in the Trial Court's determination that the ground to terminate Mother's parental rights to the Children pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102(1)(A)(i) for abandonment by willful failure to support was proven by clear and convincing evidence.

We next consider whether the Trial Court erred in terminating Mother's parental rights to the Children pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102 for willful failure to visit. The record reflects that Mother did not visit the Children during the relevant four month window. Mother testified to various transportation difficulties that prevented her from seeing the Children. We already have discussed Mother's lack of credibility. Mother's vague excuses about hardships preventing her from seeing the Children ring hollow. On the other hand, Stepmother testified that Mother "always got wherever she wanted to go."

The evidence does not preponderate against the Trial Court's findings relevant to this issue of willful failure to visit. We find no error in the Trial Court's determination that the ground to terminate Mother's parental rights to the Children pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102(1)(A)(i) for abandonment by willful failure to visit was proven by clear and convincing evidence.

The final issue we consider is whether the Trial Court erred in finding that it was in the Children's best interest for Mother's parental rights to be terminated. The relevant statutory provision is Tenn. Code Ann. § 36-1-113 (i), which provides:

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113 (i) (Supp. 2013).

In this case, essentially all of the statutory best interest factors weigh in favor of terminating Mother's parental rights. Mother has failed to support, visit, or parent the Children in any meaningful way. Regrettably, there is no hint at all from the record that Mother's long-running, self-destructive behavior is nearing an end. Mother even began the process to surrender her parental rights to the Children after the first day of trial but characteristically changed course. Meanwhile, the Children are getting along well with Father and Stepmother. The evidence is more than clear and convincing that it is in the Children's best interest for Mother's parental rights to be terminated. We find no error in the Trial Court's determination that clear and convincing evidence was proven that it was in the Children's best interest for Mother's parental rights to be terminated.

As grounds to terminate Mother's parental rights were proven by clear and convincing evidence, and it was proven by clear and convincing evidence that the termination of Mother's parental rights was in the Children's best interest, we affirm the Trial Court's judgment terminating Mother's parental rights to the Children.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Wendy H., and her surety, if any.

_____
D. MICHAEL SWINEY, JUDGE